**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CATO INSTITUTE,

*Plaintiff,*

v.

U.S. DEPARTMENT OF EDUCATION, *et al.,*

*Defendants.*

CASE NO. 22-CV-4055-TC-RES

**PLAINTIFF'S SUPPLEMENTAL BRIEF REQUESTING IMMEDIATE DECISION ON
STANDING AND MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

On November 15, 2022, this Court held a teleconference to discuss next steps in this litigation in light of the then-recent decisions in *Brown v. Dep't of Educ.*, --- F. Supp. 3d ---, No. 4:22-cv-0908-P, 2022 WL 16858525, at *1 (N.D. Tex. Nov. 10, 2022), *stay denied*, No. 22-11115 (5th Cir. Nov. 30, 2022) and *Nebraska v. Biden*, 52 F.4th 1044 (8th Cir. 2022), *cert. granted*, No. 22-506, 2022 WL 17348754, (U.S. Dec. 1, 2022). The Court permitted additional briefing to address the questions raised during the conference, specifically whether it is appropriate to stay the proceedings here pending resolution of *Nebraska* and *Brown* and, to the extent a stay is not appropriate, what actions the Court should take on various pending motions. *See* ECF 36.

For reasons explained below, the Court must first address Plaintiff's standing, and may not stay the case until it resolves that threshold question. On this point, the parties are in agreement. *See* ECF 37 at 4. As explained in Plaintiff's briefing on its motion for preliminary injunction, *see* ECF 13-1, 25, and 33, Cato Institute ("Cato") has standing to bring this case.

1

Second, once the Court concludes that Cato has standing,[1] it should immediately decide Cato's fully briefed motion for a preliminary injunction (ECF 13)—one way or the other. Cato has demonstrated that a nationwide injunction is warranted, both because Cato remains threatened with irreparable harm and because only a nationwide injunction will provide full relief. However, Plaintiff recognizes that the status of the *Brown* and *Nebraska* cases may cause the Court to weigh the balance of harms to the parties or the imminence of irreparable harm somewhat differently. If so, the Court could grant a narrower preliminary injunction or deny the injunction without prejudice to Plaintiff's ability to renew the application should *Nebraska* and *Brown* be resolved in the Government's favor.

Third—and importantly—Cato respectfully requests that the Court act quickly because doing so will permit the adversely affected party or parties to seek expedited appeal and preserve the opportunity to have this case consolidated with the Supreme Court's recently granted review of the Loan Cancellation Program in *Nebraska*.[2] *See* 28 U.S.C. § 2101(e) ("An application to the Supreme Court for a writ of certiorari to review a case before judgment has been rendered in the court of appeals may be made at any time before judgment.").

## BACKGROUND

After full briefing of Cato's motion for preliminary injunction, decisions by two courts outside of the Tenth Circuit paused Defendants' ability to implement the Loan Cancellation Program. First, on November 10, 2022, the Northern District of Texas held "[t]he Program is an unconstitutional exercise of Congress's legislative power and must be vacated." *Brown*, 2022 WL 16858525, at *1.

---

[1] Were the Court to find no standing, it would have to dismiss the case for want of jurisdiction.

[2] The Solicitor General has already petitioned the Supreme Court for a writ of certiorari before judgment (as an alternative for a requested stay) in *U.S. Dep't of Educ. v. Brown*, 22A489 (Dec. 2, 2022). This indicates that the Government prefers to have all challenges to the Loan Cancellation Program definitively resolved at an early date. This Court's immediate entry of a preliminary injunction would facilitate not only Cato's interests, but also the interests of millions of borrowers who will not need to remain in suspense over the status of their loans for years to come if this court acts promptly enough.

Second, on November 14, 2022, the Eighth Circuit reversed the Eastern District of Missouri's determination that Plaintiff-States lacked standing, and it enjoined the program pending appeal. *Nebraska*, 52 F.4th at 1048. While *Brown*'s and *Nebraska*'s merits-based questions substantially overlap with those in this case, the plaintiffs in *Brown* and *Nebraska* have advanced theories of standing notably different from and novel as against Cato's traditional competitive-injury standing theory. *See* ECF 24.

On December 1, 2022, the Supreme Court granted certiorari to review the *Nebraska* decision on an expedited basis. The Supreme Court deferred the Government's motion to lift the Eighth Circuit's stay "pending oral argument," which the Court scheduled for "the February 2023 session." *See Biden v. Nebraska*, 2022 WL 17348754, at *1. On December 2, Defendants petitioned the Supreme Court to stay the *Brown* decision or, in the alternative, to grant certiorari and consolidate *Brown* with the *Nebraska* case. *Dep't of Educ. v. Brown*, 22A489 (Dec. 2, 2022).

## ARGUMENT

### I.     The Court Must Decide Whether Cato Has Standing Before Staying this Case

Cato agrees with Defendants that *Brown* and *Nebraska* "do[] not preclude further litigation here" and that the Court must first resolve the threshold standing question in this case. *See* ECF 37 at 4. That question does not overlap with the separate standing questions in *Brown* and *Nebraska*.

Although district courts generally have power to stay proceedings and to control their dockets, *see Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963), that power is contingent on having subject-matter jurisdiction in the first place. "Without subject matter jurisdiction, the court shall not stay this action[.]" *Leon-Perez v. Railworks Track Sys., Inc.*, No. 06-4093-RDR, 2007 WL 593648, at *2 (D. Kan. Feb. 21, 2007); *see also Advanced Reimbursement Mgmt., LLC v. Plaisance*, No. CV 6:17-1139, 2018 WL 4288428, at *1 (W.D. La. July 2, 2018) ("The defendants' argument that a Court cannot stay a matter over which it lacks subject matter jurisdiction is well-taken." (collecting cases)). "[D]istrict courts have an independent obligation to address their own subject-matter jurisdiction and can dismiss actions *sua*

*sponte* for a lack of subject-matter jurisdiction." *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). "The court has no power to act without subject-matter jurisdiction." *Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Mining Claims*, No. 2:12-CV-00952-DN, 2013 WL 2445156, at \*2 (D. Utah June 5, 2013). Hence, this Court must determine whether it has subject-matter jurisdiction before it may exercise its power to stay a case. Article III standing is a prerequisite for subject-matter jurisdiction, so the Court must at least decide whether Cato has standing.

*Kittel v. First Union Mortgage Corporation*, 303 F.3d 1193 (10th Cir. 2002), cited at ECF 34, does not alter this conclusion. In *Kittel*, the court's continued jurisdiction depended on the outcome of a related proceeding in a state court. However, when the federal case was filed, jurisdiction was undisputed. On those facts, the Tenth Circuit held that it was best to wait until the outcome of state proceedings so as to avoid the danger that the jurisdictional facts would change, causing "any opinion … [to] end up akin to a prohibited advisory opinion." *Id.* at 1194. *Kittel* is thus inapposite here because, before ordering a stay, the *Kittel* court satisfied itself that it had (though may later lose) jurisdiction to hear that case. Even assuming it were appropriate to issue a stay here for case-management purposes (and as explained below, it is not), such a stay may be entered only after the Court concludes that Cato has standing and therefore the Court has jurisdiction. *See Advanced Reimbursement Mgmt.*, 2018 WL 4288428, at \*1.

Nor does *Kittle*'s concern that another court's decision on a collateral issue might deprive it of jurisdiction apply here. Cato agrees with Defendants that neither *Brown* nor *Nebraska* has preclusive effect because Cato was not a party to *Brown* or *Nebraska* and "nonmutual collateral estoppel is generally unavailable in litigation against the United States." ECF 37 at 4-5 (citing *United States v. Alaska*, 521 U.S. 1, 13 (1997)). Cato further agrees with Defendants that neither *Nebraska* nor *Brown* moots this case because Cato takes Defendants at their word in saying they "will promptly resume implementation of the loan-discharge plan whenever they are permitted to do so." *Id.* at 6 (citation

omitted). Indeed, that the *Brown* decision did not moot other pending cases is evident from the fact that the Eighth Circuit considered *Nebraska* on the merits and ultimately issued a separate and additional injunction in that case. *See* 52 F.4th at 1048 (granting injunction pending appeal).

Because Cato's standing is fully briefed in connection with its preliminary-injunction motion, *see* ECF 13-1, 25, 30, and 33, the Court may issue a decision on subject-matter jurisdiction at any time. A prompt decision would also resolve the standing arguments raised in Defendants' pending (but not fully briefed) motion to dismiss or transfer (ECF 31).[3] Cato has demonstrated its standing to challenge the Loan Cancellation Program, and this Court should so hold. However, even if the Court disagrees, all parties would benefit from an expedited ruling on this question. Upon this Court's decision, either party could immediately appeal to the Tenth Circuit and simultaneously seek certiorari before judgment and consolidation of this case with *Nebraska* under 28 U.S.C. § 2101(e). For reasons

---

[3] A ruling on standing would still leave venue-related arguments in the motion to dismiss or transfer. While the briefing on that motion is not scheduled to be completed until December 20, 2022 (ECF 36)—too late for resolution that would permit consolidation with *Nebraska*—Plaintiff responds here that venue is proper in Kansas at least because, according to Defendants' own estimate, they intend to cancel student debt owed by nearly 600,000 Kansas residents. *See* Statements & Releases, White House, FACT SHEET: The Biden-Harris Administration's Plan for Student Debt Relief Could Benefit Tens of Millions of Borrowers in All Fifty States (Sept. 20, 2022), cited at Complaint ECF 1 at ¶ 29, https://www.whitehouse.gov/briefing-room/statements-releases/2022/09/20/fact-sheet-the-biden-harris-administrations-plan-for-student-debt-relief-could-benefit-tens-of-millions-of-borrowers-in-all-fifty-states/ (estimating that 360,900 Kansas residents are eligible for $10,000 of cancellation and 225,500 are eligible for $20,000 of cancellation) (last visited Dec. 5, 2022). Hence, "a substantial part of the events or omissions giving rise to the claim," *i.e.*, the cancellation of student-loan debt, indisputably would occur in Kansas. *See* 28 U.S.C. § 1391(e). That another venue may contain more eligible borrowers or have a stronger connection to the cancellation of debt does not undermine Kansas's status as a proper venue. *Clemons v. Speigel*, No. 94-4092-SAC, 1994 WL 732630, at *2 (D. Kan. Dec. 27, 1994) ("[W]e no longer ask which district among two or more potential forums is the 'best' venue … Rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts."). Additionally, transferring this case to Washington, D.C. is unwarranted because Cato is entitled to considerable deference in its choice of forum in the State of its incorporation, which is Kansas. *See Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012) (Delaware corporation's "choice of Delaware as a litigation forum is entitled to paramount consideration," even though its principal place of business is in Washington State).

explained below, such an approach would serve the interests of the parties as well as non-party student-loan borrowers.

## II.    Stay Is Inappropriate Because of the Potential Prejudice to Plaintiff

The Court should not stay this case even after resolving the standing issue. As the Tenth Circuit explained, "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *CFTC v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). Thus, "when a federal court has jurisdiction, it also has a 'virtually unflagging obligation … to exercise' that authority." *Mata v. Lynch*, 576 U.S. 143, 150 (2015) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The fact that courts in other circuits have ruled on similar or even identical questions does not absolve a court of its obligation to adjudicate an otherwise live claim. Indeed, the *Brown* decision vacating the Loan Cancellation Program did not stop the Eighth Circuit from enjoining that same program pending appeal. *See Nebraska*, 52 F.4th at 1047.

Furthermore, a stay based on *Nebraska* or *Brown* prior to resolving Cato's motion for preliminary injunction would cause undue prejudice to Cato by exposing it to irreparable harm. If the Supreme Court were to find that the plaintiffs in *Nebraska* (and/or *Brown*) lack standing, Cato would need to scramble at lightning speed to alert this Court and urge the Court to immediately lift the stay and enjoin the Loan Cancellation Program. There is no assurance—and certainly none suggested in Defendants' briefing papers or public statements—that Defendants would not immediately issue at least 16 million loan cancellations within minutes of a Supreme Court decision favorable to the government, likely before Cato even became aware of the Supreme Court's ruling and almost certainly before this Court could act. Putting Cato and the Court in a precarious position where even constant vigilance might not prevent an unlawful half-trillion-dollar giveaway is utterly unacceptable. Thus, a stay here is inappropriate because whatever convenience a stay may provide to the Court now, that

convenience is only temporary and "does not outweigh the potential prejudice to plaintiff." *Bledsoe v. Jefferson Cnty., Kansas*, No. 16-2296-DDC, 2021 WL 2229745, at *3 (D. Kan. May 10, 2021).

A stay would also cause significant prejudice to third parties.[4] If a stay were granted and the Supreme Court were to conclude that plaintiffs in *Nebraska* and/or *Brown* lack standing, the present litigation would likely restart sometime after June 2023, essentially from square one. It then would likely take at least several months to complete. Thus, millions of borrowers would not know whether their federal loans will be forgiven and would be deprived of the ability to engage in sound financial planning until completion of this litigation. In contrast, if this Court refrains from issuing a stay and rules on Cato's pending motion for preliminary injunction now, any party aggrieved by the decision could (and likely would) immediately appeal the decision to the Tenth Circuit as well as seek consolidation of this case with *Nebraska* (via a petition for writ of certiorari before judgment). The window for such consolidation is particularly narrow because *Nebraska* is scheduled for expedited review—with oral argument to be scheduled for February 2023.

Consolidation would also promote judicial economy. Numerous cases are raising similar merits-based arguments against the Loan Cancellation Program, with plaintiffs relying on varying standing theories. *See* ECF 24. Having agreed to review the student-loan issue, the Supreme Court would benefit from having parties advancing numerous alternative standing theories, thereby increasing the odds that the Court could reach the merits and provide a prompt, definitive ruling on the legality of the Loan Cancellation Program. That approach would avoid piecemeal and duplicative challenges, each with its own standing theory, which could keep the Loan Cancellation Program under a legal cloud for months or years to come. A prompt and definitive Supreme Court ruling on the

---

[4] Cato surmises that prolonging litigation and keeping the Loan Cancellation Program in limbo for an indeterminate period of time is also prejudicial to Defendants, but Cato prefers to let Defendants speak for themselves on this matter.

merits would also allow millions of third-party borrowers to plan their financial affairs with certainty. Thus, there are significant advantages not just to the parties, but also to the borrowers themselves, millions of U.S. taxpayers, and the judicial system as a whole, for this Court to rule expeditiously.

In contrast, were this Court to stay the case (or delay a ruling on standing, which would in effect operate as a stay),[5] it would impose unjustified costs on litigants and third parties without any concomitant benefit. Now that the Supreme Court has agreed to review the legality of the Loan Cancellation Program, Cato deserves an opportunity to bring its claims—particularly its standing arguments, which are distinct from those raised by the plaintiffs in *Nebraska* and *Brown*—before the Supreme Court. Accordingly, the Court *may not* stay the case pending resolution of *Nebraska* and *Brown* but should instead proceed to the merits Cato's underlying preliminary-injunction motion.

### III.   *Brown* and *Nebraska* Neither Prevent the Court from Ruling on Cato's Preliminary Injunction Motion nor Eliminate the Risk of Irreparable Harm

If the Court agrees that Cato has standing, it should then resolve Cato's fully briefed motion for preliminary injunction. Any party aggrieved by that ruling could (and likely would) then appeal and seek certiorari to consolidate this case with *Nebraska*, as Defendants are doing in *Brown. See* 28 U.S.C. § 1292(a)(1); *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1147 (10th Cir. 2011) ("Orders granting or denying preliminary injunctions are among the types of interlocutory orders that are immediately appealable under 28 U.S.C. § 1292.").

An injunction is appropriate here because Cato is likely to succeed on the merits and the balance of harms weighs in Cato's favor. First, thus far, *Brown* is the only case to reach the merits of the Loan Cancellation Program. Its conclusion that the program is "an unconstitutional exercise of

---

[5] If forced to choose, it would be preferable from Cato's perspective if the Court were to grant a stay explicitly rather than facilitate a *de facto* stay by declining to rule. If the Court chooses the former path, at least Cato will be able to seek immediate appellate review of that decision (including a petition for a writ of certiorari in advance of a ruling from the Tenth Circuit for the same reason as above), a course of action that will be unavailable to Cato if the court simply delays issuing any ruling.

Congress's legislative power" supports Cato's likelihood of success here too. *Brown*, 2022 WL 16858525, at *1. Second, contrary to Defendants' assertion, *see* ECF 37 at 2-3, and as noted above, neither *Brown* nor *Nebraska* changes the fact that Cato faces a significant threat of irreparable harm absent a preliminary injunction.

As this Court recognized in the October 26 teleconference, standing is the most important question in any legal challenge against the Loan Cancellation Program. ECF 20 (requesting supplemental briefing on standing). There is a real possibility that the Supreme Court will uphold the *Nebraska* district court's conclusion that the Plaintiff-States in that case lack standing. *See Nebraska v. Biden*, No. 4:22CV1040 HEA, 2022 WL 11728905, at *1 (E.D. Mo. Oct. 20, 2022), *cert. granted before judgment*, No. 22-506, 2022 WL 17348754 (U.S. Dec. 1, 2022). Defendants would not have sought, and the Court likely would not have granted, certiorari if that were not so. Further, Defendants may succeed in arguing that the *Brown* plaintiffs lack standing because, according to Defendants, the district court in *Brown* erred "by granting relief that does nothing to redress the alleged procedural harms found to provide plaintiffs with standing." ECF 37 at 3 n.2 (citing Defendants' Br. in *Brown*). Such conclusions, however, would not address the *legality* of the Loan Cancellation Program. Yet, if the injunction in *Nebraska* and vacatur in *Brown* were to disappear, Defendants would be freed to inflict irreparable harm on Cato by immediately, though still unlawfully, cancelling student-loan debt.

Defendants admit "they will promptly resume implementation of the loan-discharge plan whenever they are permitted to do so." ECF 37 at 4. Specifically, "16 million applications have been approved and sent to loan servicers to be discharged when allowed by the courts." *Ibid.* (quoting U.S. Dep't of Educ., *Statement from Secretary of Education Miguel Cardona on District Court Ruling on the Biden-Harris Administration Student Debt Relief Program* (Nov. 11, 2022)). Thus, there is little doubt Defendants will expeditiously implement the pre-approved cancellation of billions of dollars in student-loan debt if the Supreme Court holds that plaintiffs in *Nebraska*—and those in *Brown*, if that case gets

consolidated—lack standing. Such cancellation would inflict irreparable competitive harm on Cato. Given the speed with which Defendants could cancel student-loan debt once permitted, there is no practical way Cato could lift the stay and seek relief from this Court in time unless a preliminary injunction were already in place. A stay before resolving Cato's motion for preliminary injunction would therefore prejudice Cato by exposing it to irreparable injury. A preliminary injunction is needed to prevent this threat of irreparable harm. *Nebraska*, 52 F.4th at 1047 ("[T]he equities strongly favor an injunction considering the irreversible impact the Secretary's debt forgiveness action would have[.]"). While Cato maintains a nationwide injunction is needed to provide full relief, it recognizes that there is ongoing debate about the scope of a district court's power to grant such relief. *See, e.g.*, *DHS v. New York*, 140 S. Ct. 599, 599-601 (2020) (Gorsuch J., concurring) (granting an application to stay nationwide preliminary injunction). Thus, to the extent that the Court believes that a narrower injunction can and should be crafted, Cato would welcome even this limited measure of protection against the threat of irreparable harm.[6]

Cato recognizes that the Court may weigh the status of the *Nebraska* and *Brown* litigation in its balance-of-equities analysis. Cato believes that a preliminary injunction is necessary to protect its interests from immediate violation by Defendants in the event that the *Nebraska* and/or *Brown* cases are dismissed for lack of standing. But whether this Court agrees with Cato, or weighs the balance of interests differently, Cato respectfully urges the Court to resolve its motion without delay.

As previously noted, expedited decision of the preliminary-injunction motion would permit the losing side to immediately appeal. The appealing party or parties could then seek certiorari before appellate judgment and consolidation of this case with *Biden v. Nebraska*. Such consolidation would

---

[6] Cato does not concede that such an injunction could be crafted or that, if crafted, it would afford Cato complete relief. Rather, Cato suggests that some relief is preferable to no relief at all.

protect Cato from the above-mentioned threat of irreparable competitive harm, the Government from piecemeal and interminable litigation limbo, and third-party borrowers from extended legal and financial uncertainty.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff urges the Court to first reach a definitive conclusion in favor of Plaintiff's standing, followed by an expeditious ruling granting Plaintiff's fully briefed motion for preliminary injunction. *See* ECF 13. Under no circumstances should the Court stay this case. Proceeding in the above-outlined fashion would promote judicial economy by allowing the losing party or parties in this case to appeal and seek to have this case consolidated with the Supreme Court's review of the student-loan issue in *Biden v. Nebraska*.

December 6, 2022                                    Respectfully submitted,

/s/ *Markham S. Chenoweth*

MARK CHENOWETH (KS Bar No. 20140)
General Counsel
SHENG LI (NY Bar No. 5448147)
Litigation Counsel
RUSSELL G. RYAN (NY Bar No. 205916)
Senior Litigation Counsel
Attorneys for Plaintiff Cato Institute
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210
Sheng.Li@ncla.legal

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 6, 2022, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, to be served on counsel for all parties by operation of the Court's electronic filing system.

<u>/s/ *Markham S. Chenoweth*</u>
Mark Chenoweth